EDWARD BUSHAY v. OCEAN CITY ELECTRIC RAILROAD
COMPANY.

Submitted July 5, 1906—Decided November 12, 1906.

1. Plaintiff, an employe of a water company, was engaged, with
   others, in connecting a main at night, the plaintiff's duty being
   to hold a lantern to show a light to the others who were working
   in a trench, the nearest edge of which was eighteen inches from
   defendant's tracks.    The gang had been working on this job
   during the latter part of that day, during which the motormen
   had sounded the gong on approaching the point.    At quitting
   time, about five P. M., the men quit, and then resumed work at
   ten o'clock at night, of which the trolley employes had no notice.
   The plaintiff held his lantern eighteen inches from the ground,
   kneeling for this purpose on the narrow strip between the trench
   and the tracks, knowing that he would be struck by a passing car
   if he did not get out of its way.    There was nothing in his occu-
   pation that prevented the free use of his senses, and no obstruc-
   tion to his vision up or down a straight track in each direction.
   These circumstances having appeared in the plaintiff's case, the
   defendant's motion that he be nonsuited for contributory negli-
   gence should be granted.
2. The case of *Daum v. North Jersey Street Railway Co.*, 40 *Vroom*
   1, distinguished.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON
and SWAYZE.

For the plaintiff, *Herbert R. Voorhees* and *William I. Gar-
rison.*

For the defendant, *J. Filhian Tatem* and *William J.
Claassen.*

The opinion of the court was delivered by

GARRISON, J.    The verdict in this case awards to the
plaintiff damages to the amount of $5,000 for personal in-
juries received by him under the following circumstances:

On August 21st, 1905, the plaintiff was a laborer in the employ of the Ocean City Water Company, and during the latter part of that day had been engaged, with three other men, in preparing to make a connection with a water main, which necessitated the digging of a hole six feet square and three feet deep alongside the tracks of the defendant, the nearest edge of the hole being about eighteen inches from the nearest track. While this work was going on, the cars of the defendant passed about every fifteen minutes, and were always slowed down by the motormen, who also rang the gong. Between five and six o'clock the plaintiff and those employed with him quit work. At ten o'clock that night they returned to make the connection with the main, and for that purpose resumed work in the hole near the tracks of the defendant, but of this the defendant had no notice. The place was within the limits of Ocean City, the surface of the ground flat and level, and the tracks straight in each direction for a long distance. The work had been in progress about half an hour, when the plaintiff, who was kneeling or stooping on the eighteen inches that was between the edge of the hole and the trolley track, was struck by a passing car. At this time the men were disposed as follows: Three of them were working in the hole and the plaintiff was holding a lantern to show a light for them to work by. He also says that he held the lantern so that he would not be hit by a car. The dirt that had come out of the hole made a bank about one foot high on three sides of the hole, and on the fourth side, which was next to the tracks, the plaintiff held his lantern about eighteen inches from the ground, kneeling or stooping for that purpose. That some part of the plaintiff's body was near enough to the trolley tracks to be struck by a car on the tracks is obvious from what actually happened. That the plaintiff was aware of this danger is testified to by himself when, in response to the question, "Did you see any car pass by there in the half hour?" he answered, "No, sir; if I did I would have had to get up." Other facts known to the plaintiff were that the hour was an unusual one and that the defendant's servants,

who had taken precautions to warn the men during the day and had presumably taken note of their quitting work at the usual hour, had been given no notice of their resumption of work. Under these circumstances the plaintiff assumed a position of which he not only knew the dangers, but also knew that he must rely upon his own circumspection to avert them. Furthermore, there was nothing in the nature of his employment that prevented the exercise of such circumspection. There was no obstruction to his vision or his hearing; nothing to prevent his use of these senses for his own protection, and nothing in the nature of what he was doing to excuse their non-use, for his lantern would throw its light into the hole whether he looked up or down the tracks, or listened for an approaching car or not. His failure, therefore, to use his senses to apprise him of a danger, of the nature of which he was fully aware, was negligence that directly contributed to his injury, for beyond question the approach of the car that struck him would have become known to him if he had been at all on the lookout for it.

The case thus presented is a direct antithesis to that of *Daum* v. *North Jersey Street Railway Company,* 40 *Vroom.* 1, which is relied upon to uphold this verdict. In that case the accident happened in the daytime (see paper book). The proximity of the place at which the plaintiff and his fellows were at work to the tracks of the defendant and the fact that they were at work were known to the defendant's motormen, and had led to the adoption by them of the custom of ringing a gong when approaching this point. The physical work at which the plaintiff in that case was engaged, namely, passing down pieces of timber to men in a trench, necessitated his kneeling position and engrossed his whole attention. The car in that case turned into the avenue in which the plaintiff was working at a point about two hundred and fifty feet away and struck the plaintiff about one minute after he had kneeled down, before doing which he had looked in that direction, and no car was in sight. In all these essential points, and especially in that upon which the case turned upon the question

of contributory negligence, namely, that the plaintiff had a right to expect that the customary warning would be given him, the Daum case differs fundamentally from the present case.

In the case before us the plaintiff's negligence appeared at the close of his testimony, hence the motion for a nonsuit should have been granted. The rule to show cause why a new trial should not be granted is made absolute.